IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FIRST SOUTHWEST VENDING §
AND FOOD SERVICE, §
 §
               Plaintiff, §
 § Civil Action No. 3:07-CV-1936-D
VS. §
 §
SOLO CUP COMPANY, §
 §
               Defendant. §

MEMORANDUM OPINION
AND ORDER

In this case removed on the basis of diversity of citizenship, plaintiff's motion to remand principally presents the question whether the removing defendant has satisfied its heavy burden of establishing improper joinder of the Texas-citizen defendant. The removing defendant contends that it has, and moves the court to stay, dismiss, or transfer this case in favor of a prior pending federal lawsuit. Concluding that the defendant has satisfied its burden of showing improper joinder, the court denies plaintiff's motion to remand and grants defendant's motion to stay. The court directs the clerk of court to close this case for statistical purposes pending further court order.

I

Plaintiff First Southwest Vending and Food Service ("First Southwest") and defendant Solo Cup Company ("Solo") entered into a written cafeteria lease agreement in 2004 ("the lease agreement"). Under the lease agreement, First Southwest was to operate a

cafeteria and vending machines in Solo's Dallas distribution center.  First Southwest is a Texas citizen, and Solo is a citizen of Delaware and Illinois (a Delaware corporation with its principal place of business in Illinois).  First Southwest avers that, pursuant to the terms of the lease agreement, it contracted with a third-party to purchase and assume its rights, duties, and obligations under the agreement, but that Solo refused to accept the assignment.  In October 2007 First Southwest filed suit in Texas state court alleging a breach of contract claim against Solo. On November 12, 2007 First Southwest filed a first amended petition asserting claims against Texas citizens Richard Boucher ("Boucher") and Martin Verville ("Verville"), both employees of Solo.  On November 19 Solo filed a notice of removal based on First Southwest's original petition, which did not name Boucher and Verville as defendants or assert claims against them.[1]  This court concluded that the notice was defective because Solo had failed to properly allege the citizenship of First Southwest, and it ordered Solo to file an amended notice of removal.  On December 12, 2007 Solo filed an amended notice, asserting in response to First Southwest's added claims against Boucher and Verville that diversity was complete at the time of the original notice of removal, and that these two defendants had been improperly joined.

---

[1]Solo contends that it did not receive a copy of First Southwest's first amended petition until the day after it filed its notice of removal.

First Southwest moves to remand, contending that complete diversity does not exist because First Southwest, on one side of the docket, and Boucher and Verville, on the other side, are Texas citizens. Solo responds that First Southwest's motion is untimely, that complete diversity existed when it filed its original notice of removal, and that Boucher and Verville have been improperly joined because there is no reasonable basis to predict that First Southwest might recover from them in Texas court. Solo also moves the court to stay, dismiss, or transfer this suit in favor of a prior pending federal lawsuit in the United States District Court for the Northern District of Illinois.

II

Although a defendant can remove a case to federal court based on diversity jurisdiction, *see* 28 U.S.C. §§ 1332 and 1441(b), such jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. *See, e.g., Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978). This means that no plaintiff can be a citizen of the same state as even one defendant. Additionally, even when there is complete diversity, a case cannot be removed to a federal court in Texas when there is a properly joined and served Texas defendant. *See* 28 U.S.C. § 1441(b).[2]

---

[2]28 U.S.C. § 1441(b):

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution,

"The doctrine of improper joinder . . . entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Id.* at 576. Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiffs are unable to establish a cause of action against the non-diverse defendant in state court. *Id.* at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Under the second alternative—the one at issue in this case—the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an

---

treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

(Emphasis added).

in-state defendant." *Id.*[3]

There are two "proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law." *Id.*

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.

*Id.* (footnote omitted). In cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The decision to conduct such an inquiry rests within the discretion of the district court and "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574.

Thus if Solo fails to meet its heavy burden of establishing that there is no reasonable basis for this court to predict that First Southwest might be able to recover against Boucher and

---

[3]"A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n. 9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000))

Verville in Texas court, this case must be remanded.

III

Solo maintains that First Southwest's motion to remand must be denied because Solo did not file the motion within the 30-day period prescribed by 28 U.S.C. § 1447(c). Solo contends that First Southwest filed the motion 32 days after the notice of removal was filed.

Solo's reliance on § 1447(c) is misplaced. This section provides, in relevant part, that "[a] motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c) (emphasis added). Although First Southwest asserts in its motion to remand that removal is improper because of the presence of Texas-citizen defendants—i.e., citizens of the state in which the action is brought[4]—it primarily moves to remand on the basis that the parties are not completely diverse. Because Solo predicates subject matter jurisdiction solely on complete diversity, if complete diversity is lacking, the court does not have subject matter jurisdiction. "By statute, remand is mandatory '*[i]f at any time prior to final judgment* it appears that the district court

---

[4]When there is complete diversity, the presence of a defendant who is a citizen of the state in which the action is brought is considered a procedural defect for which the 30-day time limit of § 1447(c) does apply. *See In re Shell Oil Co.,* 932 F.2d 1518, 1523 (5th Cir. 1991)

lacks subject matter jurisdiction.'" *Garcia v. Boyar & Miller, P.C.,* 2007 WL 1556961, at *2 (N.D. Tex. May 30, 2007) (Fitzwater, J.) (emphasis added) (citing 28 U.S.C. § 1447(c)). Accordingly, the court concludes that the 30-day limitation of § 1447(c) does not render First Southwest's remand motion untimely.

IV

Solo contends that complete diversity existed at the time it filed its original notice of removal because it had not yet received a copy of First Southwest's first amended petition, in which for the first time First Southwest asserted claims against Texas citizen-defendants. Relying on 28 U.S.C. § 1446 and *Tebon v. Travelers Insurance Co.*, 392 F.Supp.2d 894, 897-98 (S.D. Tex. 2005), Solo posits that "under Fifth Circuit law a pleading or 'other paper' that precedes the notice of removal and impacts upon the diversity analysis must be *received* by the defendant after receiving the initial pleading to be considered in the removal analysis." D. Br. 6. The court disagrees.

*Tebon* merely reflects the application of the rule of § 1446(b) that the receipt of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is removable triggers the 30-day time limit within which a defendant must remove a case. *See Tebon,* 392 F.Supp.2d at 898 ("if an 'other paper' is to start the thirty-day time period, a defendant must receive the 'other paper' after receiving the initial pleading."

(citations omitted)). This rule does not provide, as Solo suggests, that the existence of complete diversity *is determined* based on the date on which a defendant receives notice of a pleading or other paper that affords notice that a case is removable. Instead, the general rule is that removal jurisdiction is determined on the basis of claims in the state court petition as it exists at the time of removal. *See Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir. 1995). In the present case, Southwest had filed a first amended petition five days before Solo filed its notice of removal. Accordingly, complete diversity was lacking at the time Solo filed the notice of removal.

V

The court must therefore consider Solo's contention that Boucher and Verville have been improperly joined because there is no possibility that First Southwest will be able to establish a claim against them in Texas court.

A

Solo contends that although Southwest's first amended petition names Boucher and Verville as individual defendants, it fails to allege actionable facts specific to them to support its theory of recovery. Solo first points to Southwest's claim for "vicarious liability" in ¶ 6 of the first amended petition, and it argues that, because there are no claims for negligence against Solo, the doctrine of vicarious liability is inapplicable. Solo also

maintains that Solo and First Southwest were the only parties to the lease agreement, and that neither Verville nor Boucher was a signatory. Solo contends that even if Boucher and Verville were agents of Solo, there is no possibility that, as individual defendants, they can be held liable for Solo's alleged breach of contract. First Southwest, in turn, points to *Lake v. Premier Transportation*, ___ S.W.3d ___, 2007 WL 3196936, at *1 (Tex. App. Oct. 31, 2007), to support its contention that a claim against Boucher and Verville for breach of contract is recognized under Texas law.

B

First Southwest's sole claim against all defendants is for breach of the lease agreement. It contends that Boucher and Verville were agents of Solo and that all three defendants entered into the agreement. Specifically, First Southwest alleges that "[o]n May 14, 2004 Plaintiff and Defendants entered into the cafeteria lease agreement attached and incorporated herein for all purpose[s] as Exhibit A." P. Am. Pet. ¶5.01 (bold font omitted). Exhibit A is a written contract between First Southwest and Solo.

To decide the merits of the remand motion, the court must interpret the lease agreement that is the basis for First Southwest's breach of contract claim. To predict whether a plaintiff has a reasonable basis of recovery under state law, *Smallwood* instructs that the court "may conduct a Rule 12(b)(6)-

type analysis," and that it may also, "in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573. The court can for this purpose consider the full contents of the lease agreement. *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.") (internal citations omitted). Therefore, the court can interpret the lease agreement as a matter of law and rely on that interpretation in deciding First Southwest's motion to remand.

First Southwest relies on *Lake* for the proposition that, under Texas law, an agent can be held personally liable on a contract entered into by the agent on behalf of a principal. The *Lake* court stated the rule as follows: "In order for an agent to avoid personal liability on a contract entered into by the agent on behalf of the principal, the agent must disclose (1) the fact that the agent is acting in a representative capacity and (2) the identity of the principal." *Lake*, 2007 WL 3196936, at *2 (citation omitted).[5]

---

[5]Other Texas courts have stated the rule similarly. *See, e.g., Dodds v. Charles Jourdan Boutique, Inc.,* 648 S.W.2d 763, 766 (Tex. App. 1983, no writ) ("One who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he fails to disclose his agency and the identity of his principal[.]" (quoting 3 Am. Jur. 2d *Agency* § 317 (1962))).

As Solo points out, neither Boucher nor Verville was a signatory to the lease agreement. Moreover, the lease agreement contains the following merger clauses:

> 22. <u>Entire Agreement</u>. This Agreement embodies the entire agreement between the parties, supersedes all prior agreements and understandings, if any, relating to the subject matter hereof, and may be amended only by an instrument in writing executed jointly by the parties.
>
> 24. <u>Modification and Waiver</u>. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all the parties.

D. Ex. D. These clauses effectively defeat, as a matter of law, First Southwest's allegation that Boucher and Verville entered into the lease agreement in their personal capacities. Only First Southwest and Solo are signatories to the contract, and, by operation of the mergers clauses, First Southwest and Solo agreed that any prior, oral agreements (if any) involving Boucher and Verville individually were merged into, and barred by, the lease agreement itself. Moreover, First Southwest does not allege that there were any prior agreements between it and Boucher and/or Verville. And since First Southwest and Solo entered into a written contract that clearly showed that Solo was a party, First Southwest cannot establish in a Texas court that Boucher or

Verville failed to disclose the fact that he was acting in a representative capacity and failed to disclose Solo's identity as the principal.

The court therefore concludes on the basis of the terms of the lease agreement, the fact that neither Boucher nor Verville is a signatory to it, and the fact that Solo is a clearly disclosed principal, that First Southwest would be unable to establish in a Texas court that either Boucher and Verville could be held liable for breaching the lease agreement. Because First Southwest's sole claim against Boucher and Verville is for breach of the lease agreement, Solo has satisfied its burden of establishing improper joinder.

Accordingly, the court holds that Boucher and Verville have been improperly joined and that their citizenship can be disregarded in determining whether there is complete diversity. *See Smallwood*, 385 F.3d at 573. When Boucher and Verville's citizenship is disregarded, there is complete diversity, and there is no properly joined and served Texas-citizen defendant whose party status prevents removal under 28 U.S.C. § 1441(b).[6] Solo has therefore met its burden of establishing that this court has diversity jurisdiction among the parties who have been properly joined.

---

[6]Assuming *arguendo* that a motion to remand on this basis has not been procedurally waived. *See supra* § III and note 4.

VI

Having determined that complete diversity exists and that subject matter jurisdiction has been established, the court turns to Solo's motion to stay, dismiss, or transfer this suit in favor of a prior pending federal lawsuit.

In August 2007—before the instant lawsuit was filed in state court in October 2007—Solo filed a complaint against First Southwest for declaratory judgment and breach of contract in the United States District Court for the Northern District of Illinois. First Southwest has moved in the Northern District of Illinois to dismiss Solo's suit. Solo contends that the two suits present the same issues and that the court should apply the "first-to-file rule"[7] to stay, dismiss, or transfer the present suit while the prior pending lawsuit is proceeding in the Northern District of Illinois. Subject to its motion to remand, First Southwest does not oppose staying the present lawsuit until the Northern District of Illinois rules on its motion to dismiss.

The court will not now decide whether to dismiss or transfer this case. The first-filed case is pending in the Northern

---

[7]"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Valor Telecomm. Sw., LLC v. Burnett,* 2007 WL 750502, at *1 (N.D. Tex. Mar. 13, 2007) (Fitzwater, J.) (citing *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999)). "When faced with duplicative litigation in addition to outright dismissal, it sometimes may be appropriate to transfer the action or to stay it." *Id.* (citation omitted).

District of Illinois, and that court should decide initially whether it will hear the case pending before it.  A stay, as opposed to dismissal, is the proper course of action considering the general rule "that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 606 (5th Cir. 1999) (citation omitted).  But because the court is denying First Southwest's motion to remand, First Southwest is unopposed at least to a temporary stay, and the Northern District of Illinois may decide to proceed with the case before it under the "first-to-file rule," the court grants Solo's motion to stay this action.

The stay will remain in effect until the Northern District of Illinois decides First Southwest's pending motion to dismiss.  If the Northern District of Illinois decides not to dismiss the case and opts to proceed with the litigation before it, this stay will remain in effect during the pendency of the case in that court, subject to the stay's being lifted for cause on motion, or until this case is transferred to that court, if it is transferred.  If the Northern District of Illinois dismisses the case, however, this court will lift the stay on notice of that court's decision.

* * *

For the reasons explained, First Southwest's December 21, 2007 motion to remand is denied.  Solo's December 12, 2007 motion to stay, dismiss, or transfer in favor of prior pending federal lawsuit is granted to the extent that the court stays this case in accordance with the terms of this memorandum opinion and order. The court directs the clerk of court to close this case for statistical purposes pending further order of this court.

**SO ORDERED.**

April 9, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE